## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOHN ROBERTS and MISTY ROBERTS, as husband and wife residing in the State of Oklahoma, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CIV-23-00413-J |
| CITATION OIL & GAS CORPORATION, a foreign for-profit business corporation, | ) ) ) | |
| Defendants. | ) | |

## DEFENDANT CITATION OIL & GAS CORPORTATION'S MOTION FOR STAY AND BRIEF IN SUPPORT

L. MARK WALKER, OBA #10508
TIMOTHY M. SOWECKE, OBA #32512
**CROWE & DUNLEVY**
A Professional Corporation
Braniff Building
324 North Robinson Avenue, Suite 100
Oklahoma City, Oklahoma 73102
(405) 235-7700
(405) 239-6651 (Facsimile)
mark.walker@crowedunlevy.com
tim.sowecke@crowedunlevy.com

**ATTORNEYS FOR DEFENDANT
CITATION OIL & GAS CORPORATION**

July 20, 2023

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**.................................................................................................ii

**BACKGROUND FACTS**.............................................................................................. 2

**I.**    **The OCC is properly exercising its exclusive jurisdiction over the handling, storage, and disposition of saltwater** ................................................. 3

**II.**    **Oklahoma law recognizes the OCC's exclusive jurisdiction to abate a nuisance when it has already exercised its jurisdiction over same** ................... 9

**III.**   **This Court should stay this proceeding under the doctrine of primary jurisdiction** ............................................................................................. 10

**IV.**   **The *Schwartzman* five-factor test supports the stay requested here**............... 17

**V.**    **The OCC's ongoing and exclusive jurisdiction should be exhausted** ............. 19

**CONCLUSION** ...................................................................................................... 19

## TABLE OF AUTHORITIES

### CASES

*Anson Corp. v. Hill*,
    1992 OK 138, 841 P.2d 583 ................................................................. 9

*Arbuckle Abstract Co. v. Scott*,
    1998 OK 125, 975 P.2d 879 ............................................................... 19

*Arkla Exploration Company v. Shadid*,
    1985 OK CIV APP 40, 710 P.2d 126 ................................................. 11

*B.H. v. Gold Fields Mining Corp.*,
    506 F. Supp. 2d 792 (N.D. Okla. 2007) .................................. 13, 14, 15, 16, 17, 18

*Baptist Medical Center of Oklahoma, Inc. v. Aguirre*,
    1996 OK 133, 930 P.2d 213, 218 ....................................................... 11

*Fent v. Okla. Nat. Gas Co., a Div. Of Oneok Inc.*,
    1994 OK 108, 898 P.2d 126 ............................................................... 11

*Friends of Santa Fe Cnty. v. LAC Minerals, Inc.*,
    892 F. Supp. 1333 (D.N.M. 1995) ..................................................... 14

*Harding v. Shelton, Inc.*,
    2005 OK CIV APP 88, 123 P.3d 56 ................................................... 12

*Hurst v. Empire*,
    1993 OK 47, 852 P.2d 701 ................................................................. 8

*Indus., Inc. v. Transcon. Gas Pipe Line Corp.*,
    614 F.2d 33 (4th Cir. 1980) ............................................................... 18

*In re Initiative Petition No. 349, State Question No. 642*,
    1992 OK 122, 838 P.2d 1 ................................................................... 10

*Jenkins v. Frederick*,
    1952 OK 456, 257 P.2d 1058 ............................................................. 9

*Marshall v. El Paso Natural Gas Co.*,
    874 F.2d 1373 (10th Cir. 1989) ......................................................... 10

*Meinders v. Johnson*,
    2006 OK CIV APP 35, 134 P.3d 858 ................................................. 7

*Merritt v. Corp. Comm'n,*
    1968 OK 19, 438 P.2d 495 ........................................................... 5

*RJB Gas v. Colo. Interstate Gas,*
    1989 OK CIV APP 100, 813 P.2d 1 ................................................. 10, 12

*Schneberger v. Apache Corp.,*
    1994 OK 117, 890 P.2d 847 ....................................................... 4, 5

*Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Railway,*
    857 F. Supp. 838 (D.N.M. 1994)....................................... 15, 16, 17, 18, 19

*Sierra Club v. Chesapeake Operating, LLC,*
    248 F. Supp. 3d 1194 (W.D. Okla. 2017) ........................................... 13

*Southern Utah Wilderness Alliance v. Bureau of Land Management,*
    425 F.3d 735 (10th Cir. 2005)..................................................... 15

*Speaker v. Board of County Commissioners of Oklahoma County,*
    1957 OK 100, 312 P.2d 438 ..................................................... 7, 13

*State v. Sims,*
    1984 OK 77, 690 P.2d 1052 ........................................................ 8

*Taylor v. Oklahoma Water Resources Board,*
    2015 OK CIV APP 99, 368 P.3d 436 ................................................ 12

*Union Texas Petroleum v. Jackson,*
    1995 OK CIV APP 63, 909 P.2d 131 .............................................. 6, 9, 10

*United States v. Western Pacific Railroad Co.,*
    352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956) .................................. 14

*Waste Connections, Inc. Okla. Dep't of Envt'l Quality,* 2002 OK 94, 761
    P.3d 219 ....................................................................... 7, 19

*Williams Pipe Line Co. v. Empire Gas Corp.,*
    76 F. 3d 1491 (10th Cir. 1996) .................................................... 15

*Wrotenberry v. Xanadu Exploration Co.,*
    1997 OK CIV APP 87, 168 P.3d 791 ............................................... 4, 5

## STATUTES

17 O.S. § 52 ............................................................................ 4

17 O.S. § 52(A)(1)(i), (j) and (A)(2) .................................................................. 3

52 O.S. § 139 ................................................................................................. 4, 5

52 O.S. § 139(A) and § 139(B)(1)(j) and (B)(2) ............................................... 4

52 O.S. § 149 ..................................................................................................... 7

52 O.S. § 149(8) ................................................................................................. 8

52 O.S. § 153 ..................................................................................................... 8

## OTHER AUTHORITIES

Black's Law Dictionary 564 (6th ed. 1990) ....................................................... 9

OAC 165:10-7-2, *et seq.* ................................................................................... 8

Question Submitted by: Lawrence R. Edminson, Direction, Department of
    Pollution Control, 1986 OK AG 59 ............................................................... 8

*Webster's New Collegiate Dictionary* 399 (1977) ............................................ 9

Defendant Citation Oil & Gas Corp. ("Citation"), respectfully moves the Court to stay this proceeding pending the disposition of ongoing proceedings at the Oklahoma Corporation Commission (the "OCC"), Case No. PD2023-000057 (filed June 9, 2023) and Incident No. 18521OGDO30200 (filed April 7, 2021). Plaintiffs John Roberts and Misty Roberts, husband and wife (collectively, "Plaintiffs" or the "Roberts") are suing Citation for alleged negligent injury to property, public and private nuisance, trespass, and unjust enrichment, related to alleged saltwater contamination to their water well and property, and are asking this Court for abatement as a remedy. *See* Plaintiffs' Petition ¶¶ 18–50. However, since April 7, 2021, the OCC has been addressing abatement of the alleged nuisance on the Plaintiffs' property under its exclusive statutory and regulatory enforcement authority related to oil and gas facilities, and the release and site remediation of deleterious substances related thereto. To promote the orderly and efficient resolution of the remediation and abatement issue so this Court can efficiently address any residual issues, this Court should stay this proceeding pending the outcome of the ongoing OCC proceedings. In support thereof, Citation shows the Court as follows:

## BACKGROUND FACTS

On or about April 7, 2021, Plaintiff John Roberts complained to the OCC about alleged high salt levels in their water well located on property in the SE/4 NE/4 of Section 4, Township 5 North, Range 9 West, Caddo County, Oklahoma. The location of the Roberts' well is within the boundaries of Citation's East Cement Unit. In response to Roberts' complaint, the OCC field inspector issued a Form 1085, OCC Incident No.

18521OGDO30200 (the "Incident Report"). The Incident Report is attached hereto as Exhibit 1.

From April 7, 2021 through October 26, 2022 the OCC Field Operations Department conducted an investigation in the area which included, but was not limited to, taking water samples from nearby wells, conducting mechanical integrity tests on nearby injection/disposal wells, conducting EM surveys around nearby oilfield operations, shooting fluid levels in nearby wells, conducting visual inspections of well sites, and checking casing/tubing pressures on nearby wells and flowlines. The investigation is ongoing but to date has not provided a clear answer to whether the salinity and alleged contamination of the Roberts' well is ongoing, and it has not determined the source of the salinity.

On October 25, 2022, a meeting was held with Citation, OCC Field Operations, and the OCC Pollution Abatement Department ("Pollution Abatement Department"). At that meeting it was recommended that Citation test the injection line for one of its injection wells. It was also recommended that Citation check fluid levels on two wells not producing at the time (the ECU 302 and the ECU 5-1a). On October 26, the OCC field inspector met Citation to test the flow line for the ECU 2-1A. The line held 1240 psi for one hours. The fluid level was 70 feet on the ECU 3-2 and 475 feet on the ECU 5-1a. There was no indication that the flow line or the inactive wellbores were contributing to the salinity or alleged contamination of the Roberts' well. Nevertheless, to continue to assist with the ongoing investigation, Citation has met with and provided the Roberts and the Pollution Abatement Department with a proposed sampling and analysis plan ("SAP"), but the

Roberts have not responded with any comments to Citation's proposal or otherwise granted Citation site access to perform the SAP. The investigation and remediation determination is ongoing. On June 9, 2023, Citation filed Case No. PD2023-000057 to more formalize the OCC's investigation and the exercise of its exclusive jurisdiction over abatement and remediation as it relates to oil and gas operations. The Plaintiffs are Respondents and have entered an appearance and notice of protest in said PD cause.

## I.  The OCC is properly exercising its exclusive jurisdiction over the handling, storage, and disposition of saltwater.

The OCC is properly exercising its jurisdiction over alleged oilfield pollution which was triggered when the OCC was notified by the Plaintiffs in April 2021. Pursuant to 17 O.S. § 52(A)(1)(i), (j) and (A)(2), the OCC has "exclusive jurisdiction" over "the handling, transportation, storage and disposition of saltwater, mineral brines, waste oil, and other deleterious substances", including "site remediation" of "spills of deleterious substances" from facilities associated with oil and gas drilling, production, and operation. Title 52 O.S. § 139(A) and § 139(B)(1)(j) and (B)(2) expressly vest the OCC with the "power, authority and duty to promulgate and enforce rules, and issue and enforce orders governing and regulating the handling, storage and disposition of saltwater, mineral brines, waste oil and other deleterious substances . . . for the purpose of preventing the pollution of the surface and subsurface waters in the state", including "site remediation" associated with "spills of deleterious substances." Title 17 O.S. § 52 and 52 O.S. § 139, therefore, vest the OCC with "exclusive jurisdiction, power and authority" over matters like the one involved here, *i.e.*,

claims involving the disposal of oil and gas fluids and saltwater, and the remediation thereof.

In *Schneberger v. Apache Corp.*, 1994 OK 117 ¶ 7, 890 P.2d 847, 849, the Oklahoma Supreme Court acknowledged the OCC's exclusive jurisdiction over pollution remediation, stating "the Commission exercised its exclusive jurisdiction on pollution matters and ordered a cleanup." In *Schneberger*, the plaintiff sued in federal district court contending that, pursuant to a settlement agreement, the defendant was obligated to remediate oilfield pollution in excess of what the OCC was requiring and that, in the absence thereof, the defendant was liable for the cost of such additional remediation as damages. In this context, the Oklahoma Supreme Court affirmed that the OCC's jurisdiction over pollution cleanup is *exclusive*.

In *Wrotenberry v. Xanadu Exploration Co.*, 1997 OK CIV APP 87, 168 P.3d 791, the Oklahoma Court of Civils Appeals noted, "The Oklahoma Legislature has charged the Commission with the power and duty 'to make and enforce such rules and orders . . . as are reasonable and necessary for the purpose of preventing the pollution of the surface and subsurface waters in the state, and to otherwise' prevent oilfield pollution." *Id.* ¶ 17 (citing 52 O.S. § 139). In light of this, the *Wrotenberry* court stated, "The Legislature and commission have clearly spoken: the prevention of pollution of the surface and subsurface from oil field operations is of paramount public interest[,]" *id.* ¶ 18, and is exclusively the responsibility of the Commission when its jurisdiction has been invoked. *See Merritt v. Corp. Comm'n*, 1968 OK 19, 438 P.2d 495, 498 ("The Commission is vested with jurisdiction, power and authority and it shall be its duty to make and enforce such rules,

regulations and orders governing and regulating the handling, storage and disposition of salt water for the purpose of preventing the pollution of the surface and subsurface waters of the state.").

Under identical circumstances as exist here, the OCC recently ordered it had exclusive jurisdiction over the abatement and remediation of alleged saltwater disposal well brine pollution. *See* Transcript of Court's Ruling, OCC Case No. PD2021-000175, dated April 22, 2022, attached hereto as Exhibit 2. On April 22, 2022, Judge Sean Denton, Administrative Law Judge ("ALJ") for the OCC, rendered a ruling denying the plaintiffs' motion to stay the OCC proceedings because a district court action was also pending. The ALJ determined that, since the time the landowner complained to the OCC and the OCC opened a 1085 Report on July 15, 2020, "the OCC has exercised jurisdiction over the problem and an investigation has been ongoing ever since to determine the exact source of the contamination so that a remediation plan can be formulated . . . ." Exhibit 2, p. 6, lines 5–9. Specifically, "[b]y [the operator] filing the formal Application, this did not change jurisdiction in any way[,]" which was being exercised since July of 2020 when the landowner first complained to the OCC. Exhibit 2, p. 7, lines 18–24. Moreover, the ALJ clarified that the alleged contamination "falls within the *exclusive* jurisdiction of the OCC." Exhibit 2, p. 8, lines 20–22 (emphasis added). Here, Citation has filed a formal proceeding with the OCC, and despite such action, "[t]he OCC had already been exercising jurisdiction over this problem since" April 2021 when the Plaintiffs originally complained and the OCC operand the original 1085 complaint, and the proceeding has been ongoing ever since.

The ALJ's ruling is also in accord with a recent determination in Latimer County District Court, *Flener v. A & A Tank Truck Co. et al.*, case no. CJ-21-29. That lawsuit was related to the OCC proceeding mentioned above, and the parties presented similar arguments to the district court regarding jurisdiction of the OCC in relation to the court. The court granted the defendants' motions to stay, holding in part:

> The Court agrees with Defendants and with the Oklahoma Corporation Commission that the OCC has exclusive authority to determine pollution remediation. *See Union Texas Petroleum v. Jackson*, 1995 OK CIV APP 63, ¶ 17, 909 P.2d 131 ("[T]he Corporation Commission is granted the exclusive jurisdiction, power and authority and indeed the duty to make and enforce rules, regulations and orders governing and regulating the handling, hauling, storage and disposition of salt water, mineral brines, waste oil and other deleterious substances produced from or obtained or used in connection with the drilling, development, producing and processing of oil and gas.") As both Defendants noted, Plaintiffs' nuisance claim is squarely in front of the OCC and has been since July, 2020.

*See* Order Granting Defendant A&A Tank Truck Co. and Defendant Omni Environmental Solutions, Inc.'s Motions to Stay, p. 1, attached hereto as Exhibit 3. The court went on to acknowledge that its determination adheres to the principle of administrative exhaustion, stating that "'It is a well established principle of law that where an administrative agency is vested with the exclusive authority to determine a matter, the courts will not 'step in' and interfere with, or prevent, its making that determination, nor will they assume jurisdiction in the matter, until the complainant's administrative remedy has been exhausted.'" *Id*. at p. 2 (quoting *Speaker v. Board of County Commissioners of Oklahoma County*, 1957 OK 100, 312 P.2d 438; *also citing Waste Connections, Inc. Okla. Dep't of Envt'l Quality*, 2002 OK 94, ¶ 761 P.3d 219, 223 ("Where relief is available from an

administrative agency, a plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts.")

The district court's holding in *Flener v. A & A Tank Truck Co. et al.* is also consistent with the Oklahoma Court of Civil Appeals decision in *Meinders v. Johnson*, 2006 OK CIV APP 35, ¶ 28, 134 P.3d 858, 867. There, the court held that the OCC's authority was exclusive in relation to other administrative agencies with authority to address pollution, and that otherwise there existed concurrent jurisdiction between the OCC and the district court regarding pollution remediation, and that priority jurisdiction would be determined between them based on whether the OCC had first exercised its jurisdiction. In *Meinders*, unlike here, the OCC had never exercised its jurisdiction over the matter. *Id*. at ¶¶ 4, 5, 32, 134 P.3d at 868-69.

Indeed, here the OCC has exercised its jurisdiction ever since the landowner made its complaint and the OCC initiated its investigation in April 2021; and the OCC is *the* expert administrative agency capable of addressing Plaintiff's alleged saltwater and contamination claims via its exclusive jurisdiction prior to adjudication in this court. Pursuant to 52 O.S. § 149, a Conservation Division has been established within the OCC and it has its own "enforcement officers" who enforce "the rules, regulations and orders relating to . . . the prevention of pollution." 52 O.S. § 149(8); *see also* 52 O.S. § 153 (giving the OCC statutory authority to designate employees to conduct investigation, issue field citations, serve notices, subpoenas, and orders). The OCC has a staff of geologists, engineers, hydrologists, and environmental specialists with specialized knowledge, competence and expertise in addressing and remediating oilfield-related pollution in

accordance with applicable cleanup standards. The OCC's rules for site assessment and remediation projects are found in OAC 165:10-7-2, *et seq*. These technical staff members are uniquely qualified to address the abatement and remediation of the alleged pollution on the Plaintiffs' property. That is exactly what is occurring presently, and this Court should refrain from any further action until that process is completed.

The language of the above-referenced statutes, which provide that the OCC's jurisdiction over pollution abatement is exclusive, are clear and unambiguous. This Court must construe the language in accordance with its plain and ordinary meaning. *E.g.*, *Hurst v. Empire*, 1993 OK 47, 852 P.2d 701; *State v. Sims*, 1984 OK 77, 690 P.2d 1052 (courts are bound by plain language of statute). In an AG Opinion that considered the exclusive jurisdiction of the OCC, the Oklahoma Attorney General opined, "To construe these statutes as not covering instances where oil, saltwater or other deleterious substances have become mixed with soil thereby contaminating it, would be an absurd result." Question Submitted by: Lawrence R. Edminson, Director, Department of Pollution Control, 1986 OK AG 59.

Moreover, it is well established in Oklahoma that "where the language of a statute is plain and unambiguous, and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself." *Jenkins v. Frederick*, 1952 OK 456, 257 P.2d 1058. "Words are to be given the same meaning as that attributed to them by ordinary and common definitions." *Anson Corp. v. Hill*, 1992 OK 138, ¶ 10, 841 P.2d 583, 585. *Webster's Dictionary* defines "exclusive" as "limited to possession, control, or use <u>by a single individual or group</u> . . . <u>excluding</u>

others from participation." *Webster's New Collegiate Dictionary* 399 (1977) (emphasis added). Black's Law Dictionary defines "exclusive jurisdiction" as "[t]hat power which a court or other tribunal exercises over an action or over a person <u>to the exclusion of all others</u>." Black's Law Dictionary 564 (6th ed. 1990) (emphasis added). There is no need for statutory construction or interpretation other than to read the plain language of the statute which expressly vests exclusive authority in the OCC to abate pollution associated with oil and gas activities.

## II. Oklahoma law recognizes the OCC's exclusive jurisdiction to abate a nuisance when it has already exercised its jurisdiction over same.

In *Union Texas Petroleum v. Jackson*, 1995 OK CIV APP 63, 909 P.2d 131, one of the respondents in an OCC pollution proceeding contested the OCC's jurisdiction claiming that "the only proper jurisdiction lies in district court because this is an action to abate a public nuisance." *Id.* at 138. After first noting the OCC's jurisdiction to address oil and gas-related pollution and the remediation thereof, the Court in *Union Texas* rejected this argument, holding that the "[Corporation] Commission may proceed to abate such 'nuisance' . . . in accordance with this State's statutes and court decision, including the law of nuisance in order to enforce compliance with its rules and regulations duly promulgated to effectuate statutory duties." *Id*. at 141. Thus, the Court recognized that, in exercising its jurisdiction over the remediation of oil and gas-related pollution, the OCC is at the same time addressing the abatement of the alleged nuisance. Furthermore, the *Union Texas* decision makes clear that while the district court has jurisdiction to address damages related to nuisance, the OCC has jurisdiction over abatement of oilfield-related contamination. *Id*.

at 139; *see also* FN 12 (citing to *Marshall v. El Paso Natural Gas Co.*, 874 F.2d 1373 (10th Cir. 1989) (although Corporation Commission has authority to order remedial action, that authority does not prevent district courts from awarding *damages* for cleanup.)) Therefore, the OCC should exercise its pollution abatement jurisdiction first and this Court may thereafter address the money damages issue.

### III.    This Court should stay this proceeding under the doctrine of primary jurisdiction.

The grant of exclusive jurisdiction to the OCC over pollution remediation where it has exercised such jurisdiction, is also supported by the doctrine of "Primary Jurisdiction." Under this doctrine, courts refrain from deciding issues in an area of law that lies within the specialized expertise and knowledge of an agency. *RJB Gas v. Colo. Interstate Gas*, 1989 OK CIV APP 100, ¶ 29, 813 P.2d 1, 6 (recognizing the principle of the doctrine). The doctrine "comes into play whenever enforcement of the claim requires issues to be resolved which have been placed within . . . the specialized knowledge of an administrative body." *In re Initiative Petition No. 349, State Question No. 642*, 1992 OK 122, ¶ 16, 838 P.2d 1, 26; *Fent v. Okla. Nat. Gas Co., a Div. Of Oneok Inc.*, 1994 OK 108, 898 P.2d 126, 134. Pursuant to the doctrine, this Court should abstain from addressing the Plaintiffs' claims until the OCC exhausts its jurisdiction and utilizes its specialized knowledge and expertise to address abatement and remediation.

Oklahoma has recognized and applied the doctrine of primary jurisdiction when reconciling jurisdiction between the district court and administrative agencies. In *Baptist*

*Medical Center of Oklahoma, Inc. v. Aguirre*, the court addressed the competing

jurisdiction between the workers compensation commission and the district court and held:

> the WC ("Worker's Compensation") court has *primary jurisdiction* not only
> of compensation claims but also of ancillary quests by providers for approval
> of their necessary medical services. Once the WC court's jurisdiction is
> invoked and the district court has been given proper notice that the former
> tribunal has the claim *sub judice*, the *latter forum must defer to the primary*
> *jurisdiction* of the WC court and await that forum's adjudication.

1996 OK 133, 930 P.2d 213, 218 (Emphasis in original). The Oklahoma Supreme Court

also held in *Aguirre* that "a district court's judicial process will be suspended pending

disposition of the issues referred to the administrative body." *Id.* at FN 13. In *Fent*, the

Oklahoma Supreme Court noted that the primary jurisdiction doctrine comes into play

whenever adjudication of the claim calls for resolution of issues which under a regulatory

scheme had been placed within the special competence of an administrative agency. *Fent*,

1994 OK 108, ¶ 19, 898 P.2d 126 at FN 26 (Citing to *Stipe v. Theus*, "[t]his Court appears

to have invoked the primary jurisdiction doctrine without adopting it by name."); *see also*

*Arkla Exploration Company v. Shadid*, 1985 OK CIV APP 40, 710 P.2d 126, 128

(recognizing OCC had primary jurisdiction under its recognized statutory authority);

*Harding v. Shelton, Inc.*, 2005 OK CIV APP 88, 123 P.3d 56, 62 (recognizing primary

jurisdiction of OCC to determine rights under pooling order); *Taylor v. Oklahoma Water*

*Resources Board*, 2015 OK CIV APP 99, 368 P.3d 436, 443-444 and FN 12 (recognizing

primary jurisdiction); *RJB Gas Pipeline Co. v. Colorado Interstate Gas Co.*, 1989 OK CIV

APP 100, 813 P.2d 1, 6 (same).

In *Stipe v. Theus* the Oklahoma Supreme Court was called upon to address a conflict that existed between the OCC's jurisdiction and the district court's jurisdiction. On the one hand, the *Theus* court recognized the OCC's jurisdiction to determine the reasonableness of costs under a pooling order. On the other hand, the *Theus* court recognized that only the district court could award money damages for the unpaid costs.

In resolving the conflict, the Oklahoma Supreme Court stayed the district court lawsuit pending the OCC's resolution of the reasonableness of costs issue, stating:

> An intolerable conflict of jurisdiction exists here between the Commission and the district court since both tribunals have jurisdiction to determine the disputed issue, i.e., what are the reasonable and proper costs? This conflict should not continue, and only one tribunal should make the determination . . . . Petitioner . . . is entitled to a stay of that proceeding [(i.e., the district court lawsuit)] until the Commission makes or has made disposition of petitioner's application to determine proper costs.

*Id.* at 349–50.

It is noted that, in *Theus*, the district court lawsuit was filed before the OCC application was filed. Nevertheless, the Oklahoma Supreme Court held that the district court lawsuit must be stayed pending resolution of the issue over which the OCC had jurisdiction. The same result should apply here.

The Oklahoma Supreme Court has further ruled that where a plaintiff attempts to bypass agency jurisdiction by seeking a court ordered injunction, the agency maintains primary jurisdiction and the district court should abstain from exercising any jurisdiction until the agency process is exhausted. *Speaker v. Board of County Commissioners of Oklahoma County,* 1957 OK 100, 312 P.2d 438. In *Speaker v. Board of County Commissioners of Oklahoma County* the Court held that "Where an administrative agency

has primary jurisdiction on the question in issue, the courts ordinarily will not grant injunctive relief prior to a decision by the agency." 1957 OK 100, 312 P.2d 438, 441. The Court went on to recognize "It is a well established principle of law that where an administrative agency is vested with the exclusive authority to determine a matter, the courts will not 'step in' and interfere with, or prevent, its making that determination, nor will they assume jurisdiction of the matter, until the complainant's administrative remedy has been exhausted." *Id*.

Oklahoma federal courts have also held that parties cannot end-around the primary jurisdiction of the OCC: "[p]rimary jurisdiction will often be invoked when a plaintiff seeks injunctive relief, because there is the greatest likelihood that a court's order will interfere with administrative agency's proceedings." *Sierra Club v. Chesapeake Operating, LLC*, 248 F. Supp. 3d 1194, 1208 (W.D. Okla. 2017) (citing *B.H. v. Gold Fields Mining Corp.*, 506 F. Supp. 2d 792, 805 (N.D. Okla. 2007). In *Sierra Club*, the OCC had not initiated a formal agency proceeding, but it had taken a series of actions in response to seismic activity to reduce the volume of oilfield fluids injected into disposal wells. *Id*. The court dismissed the plaintiff's complaint for injunctive relief explaining, "Courts have stated that '[i]t is axiomatic that the advisability of invoking the primary jurisdiction is greatest where the issue is already before the agency.'" *Id*. (quoting *Friends of Santa Fe Cnty. v. LAC Minerals, Inc.*, 892 F. Supp. 1333, 1350 (D.N.M. 1995)). The court went on to state, "[t]he issues involved in this case are clearly before the OCC, and they clearly do have the attention of that agency." *Id*.

13

In the present case, abatement and remediation of Plaintiffs' alleged nuisance claim is already squarely in front of the OCC and has been since April 2021. Under such circumstances, any abatement ruling by this Court risks conflicting with the OCC's abatement ruling.

In *B.H. v. Gold Fields Mining Corp.*, 506 F. Supp. 2d 792, 805 (N.D. Okla. 2007), the court addressed whether it was proper for the court to apply the doctrine of primary jurisdiction and to stay plaintiffs' civil proceeding pending the determination and outcome of defendant's cleanup requirements under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") which is administered by the Environmental Protection Agency ("EPA"). The Court first recognized the authority and reasoning from the United States Supreme Court and the Tenth Circuit regarding primary jurisdiction:

> The Supreme Court has recognized that there are circumstances when courts should avoid interference with an ongoing administrative process. Primary jurisdiction applies "where a claim is originally cognizable in the courts, and comes into play whenever the enforcement of the claim requires resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). There are two policy goals behind this doctrine: (1) to ensure "desirable uniformity in determinations of certain administrative questions;" and (2) to "promote resort to agency experience and expertise where the court is presented with a question outside it conventional experience." *Williams Pipe Line Co. v. Empire Gas Corp.*, 76 F. 3d 1491, 1496 (10th Cir. 1996). <u>If an administrative agency has primary jurisdiction over a matter, the proper course for a court is to stay the case until the administrative agency has completed its work</u>. *Southern Utah Wilderness Alliance v. Bureau of Land Management*, 425 F.3d 735 (10th Cir. 2005).

*Id.* at 803 (emphasis added). While the *Gold Fields* court stated there is "no fixed formula" for determining whether primary jurisdiction applied, it recognized the five-factor test utilized in *Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Railway*, 857 F. Supp. 838 (D.N.M. 1994):

> (1) whether the court is being called upon to consider factual issues outside the conventional experience of judges; (2) whether defendant could be subject to conflicting orders; (3) whether agency proceedings have already begun; (4) whether the agency has shown diligence in resolving the issue; and (5) the type of relief requested.

*Gold Fields*, 506 F. Supp. 2d at 803 (citing to *Schwartzman*, 857 F. Supp. 838, 841–43).

In *Schwartzman*, the plaintiff sought injunctive relief under theories of private and public nuisance, and the court stayed those claims until the EPA finalized its investigation and remedial plan. Under the **first factor**, the *Gold Fields* court concluded that because of the complexity of the factual issues and expertise of the EPA, and because the court's evaluation of a reasonable method of abatement would be duplicative, such "factor favors abstention until the EPA resolves its investigation of Tar Creek." *Id.* at 803–04. Under the **second factor**, the court found that "defendants would almost certainly be subject to conflicting orders from the Court and the EPA," that defendants were already engaged with the EPA on investigation and remediation efforts, and that "[t]he proper balance of judicial efficiency and administrative expertise in a specialized area such as environmental regulation favors abstention under this factor." *Id.* at 804.

Under the **third factor**, the court recognized that "both parties admit that EPA has initiated an investigation of Tar Creek and remediation is ongoing" and concluded that such fact "strongly favors the invocation of primary jurisdiction" in favor of the EPA. *Id.*

15

For the **fourth factor**, the court acknowledged that the EPA had been working at Tar Creek for approximately 25 years and that "[p]laintiffs are understandably frustrated that Tar Creek has been listed as a Superfund site for over 20 years, and much work remains to be done." *Id.* The court noted that such fact "does not establish, by itself, a lack of due diligence by the EPA." *Id*. Nevertheless, the court found that such factor "weighs against invoking primary jurisdiction." *Id*. at 804–05. On the **fifth factor**, the court found that the type of relief—abatement—would likely interfere with the ongoing EPA proceedings, and that "CERCLA grants the EPA authority to create a plan for remediation at Superfund sites, and the type of injunctive relief requested by plaintiffs falls squarely within EPA's authority." *Id.* at 805. Accordingly, the court concluded that such factor weighed "in favor of staying plaintiffs' claims for injunctive relief" related to abatement of the alleged nuisance at Tar Creek. *Id.*

After taking all of the *Schwartzman* factors into account, the court concluded that the EPA "routinely handles these matters, and cleanup of environmental hazards falls soundly within the EPA's expertise[,]" and "[i]f the Court were to order abatement, the Court's order would almost certainly conflict with the EPA's efforts at Tar Creek." *Id*. Accordingly, the court concluded that the plaintiffs' request for abatement should "be stayed until the EPA relinquishes responsibility for the Tar Creek Superfund site." *Id*.

## IV.    The Schwartzman five-factor test supports the stay requested here.

The facts of this case closely resemble those in *Gold Fields* and, therefore, an application of the *Schwartzman* factors favors the application of primary jurisdiction and a stay of this action. Under the first factor (whether the court is being called upon to consider

factual issues outside of the court's conventional experience), the remediation of the alleged pollution is of a scientific nature involving specialized knowledge of the fate and transport of brine fluids, the attenuation of contaminants in soil, soil science, hydrology, and site remediation among other disciplines, and such competence falls squarely within the OCC's specialized expertise, and outside the conventional experience of district courts. *See Gold Fields*, 506 F. Supp. 2d at 803 ("The factual issues that will have to be resolved to craft an order for injunctive relief are complex."). It is unclear how this Court would determine the best method of abatement of the alleged nuisance without the OCC's abatement and remediation expertise. *See id*. ("Although it would not be impossible for the Court to craft an appropriate order, it would certainly require help from outside sources."). Accordingly, this factor weighs in favor of primary jurisdiction and the requested stay.

Under the second factor (whether the defendant could be subject to conflicting orders), it is highly unlikely that this Court's determinations with regard to abatement and remediation would be exactly the same as the OCC's remediation determination. Because of this, Citation could be subjected to conflicting remediation orders. "The proper balance of judicial efficiency and administrative expertise in a specialized area such as environmental regulation favors abstention under this factor." *Gold Fields*, 506 F. Supp. 2d at 804.

Under the third *Schwartzman* factor (whether agency proceedings have already begun), it is undisputed that the OCC's jurisdiction began when it was notified of the salinity and alleged contamination in April 2021, and that a formal application has also been filed. Considerable activities have occurred in the ongoing OCC investigation and

17

prior to the Plaintiffs' filing of this lawsuit. As such, this factor supports primary jurisdiction and the requested stay. *See CF Indus., Inc. v. Transcon. Gas Pipe Line Corp.*, 614 F.2d 33, 35 (4th Cir. 1980) ("'The advisability of invoking primary jurisdiction is greatest when the issue is already before the agency.'" (citation omitted)).

The fourth *Schwartzman* factor (whether the agency has shown diligence in resolving the issue), also supports primary jurisdiction. The OCC has been actively engaged in investigation, and those efforts are ongoing. The OCC has conducted sampling, site visits, and has conducted and overseen other investigative activities, *e.g.*, mechanical integrity tests, checking fluid levels in wells, *etc*. This matter has by no means been languishing before the OCC. Therefore, this factor supports the requested stay.

Lastly, the fifth *Schwartzman* factor (the type of relief requested), favors primary jurisdiction. The OCC has the specific statutory authority and regulations in place to abate and remediate the salinity and alleged contamination. In this lawsuit, the Plaintiffs are requesting the same abatement which falls within the OCC's exclusive jurisdiction. Therefore, this factor supports the requested stay.

This Court has the inherent authority to stay these proceedings pending disposition of the OCC proceedings. Applying the five-factor *Schwartzman* test to the facts of this case clearly justify the application of primary jurisdiction and the grant of the requested stay.

## V.    The OCC's ongoing and exclusive jurisdiction should be exhausted.

Lastly, the OCC is already properly exercising that jurisdiction in response to notice provided to it in April of 2021. That administrative process should be exhausted before this lawsuit proceeds. "Where relief is available from an administrative agency, a plaintiff is

ordinarily required to pursue that avenue of redress before proceeding to the courts." *Waste Connections, Inc. Okla. Dep't of Envt'l Quality*, 2002 OK 94, ¶ 761 P.3d 219, 223; *see also Arbuckle Abstract Co. v. Scott*, 1998 OK 125, ¶ 15, 975 P.2d 879, 886 ("[E]xhaustion of administrative remedies is a simple rule of orderly procedure and is designed to allow administrative bodies to perform their statutory functions free from premature and unnecessary interference by preliminary court litigation."). Accordingly, this Court should allow the current OCC proceeding to exhaust itself before addressing any of Plaintiffs' claims.

## CONCLUSION

The OCC has exclusive statutory authority to address the abatement and remediation of pollution of the type alleged here. Moreover, the OCC has a technical staff with specialized expertise and competence to address same. And the OCC has exercised and is continuing to exercise such jurisdiction with regard to the salinity and alleged contamination of the Roberts' property. The OCC's determination of this issue will have considerable impact on the ultimate outcome of this lawsuit. Granting Citation's motion and staying this proceeding pending exhaustion of the ongoing OCC proceeding will promote judicial efficiency and avoid conflicting results. For all of the reasons stated above, Citation respectfully requests that this Court stay this action pending the outcome of the OCC proceeding.

Respectfully submitted,

*s/Timothy M. Sowecke*

L. MARK WALKER, OBA #10508
TIMOTHY M. SOWECKE, OBA #32512
CROWE & DUNLEVY
A Professional Corporation
Braniff Building
324 North Robinson Avenue, Suite 100
Oklahoma City, Oklahoma 73102
(405) 235-7700
(405) 239-6651 (Facsimile)
mark.walker@crowedunlevy.com
tim.sowecke@crowedunlevy.com

**ATTORNEYS FOR DEFENDANT
CITATION OIL & GAS CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of July, 2023, I electronically transmitted the attached document to the Clerk of the Court using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Justin T. Hiersche
J. Scott Henderson
Miranda L. Harris

*s/Timothy M. Sowecke*