## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOHN ROBERTS and MISTY ROBERTS, | ) | |
| as husband and wife residing in the State | ) | |
| of Oklahoma, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. CIV-23-00413-J |
| | ) | |
| CITATION OIL & GAS CORPORATION, | ) | |
| a foreign for-profit business corporation, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**JOHN ROBERTS AND MISTY ROBERTS' RESPONSE IN OBJECTION TO DEFENDANT, CITATION OIL & GAS CORPORATION'S, MOTION FOR STAY, and BRIEF IN SUPPORT [ DKT. 7]**
_____

NOW INTO COURT COMES Plaintiffs, John Roberts and Misty Roberts, husband and wife ("Plaintiffs") and submit their Response in Objection to Defendant's Motion for Stay, plus brief in support [Dkt. 7].

## BRIEF IN SUPPORT

### I.     FACTUAL AND PROCEDURAL HISTORY

#### a.  Factual History

Plaintiffs are the fee simple owners of real property located in Section 4 of Township 5 North Range 9 West Caddo County, State of Oklahoma and consisting of approximately forty (40) acres more or less ("Plaintiffs' Property").  Upon information and belief, Defendant owned and/or operated those certain oil and gas producing wells ("Citation O&G Wells") and saltwater disposal wells ("Citation SWD Wells"), tanks, disposal facilities, flow lines and/or other oil and gas field related equipment on, adjacent to, or proximal to Plaintiffs' Property (collectively, "Citation Wells").

Defendant's Citation O&G Wells produce oil and gas and the Citation SWD Wells dispose of deleterious substances including but in no way limited to salt water, brine and/or other noxious and deleterious substances ("Toxic Substances"). The Citation SWD Wells include, but are certainly not limited, to East Cement Unit (Petree 1A) 2-1A Well API No. 35015364270003 ("ECU 2-1A Well").

During and subsequent to the operations of the various Citation Wells, operations caused the release of Toxic Substances within intervals that contained geological conditions which would allow communication between formations allowing the Toxic Substances to impact the surrounding intervals and ultimately leading to pollution of

Plaintiffs' private water well and water table restricting and prohibiting Plaintiffs' access to fresh water on Plaintiffs' Property. Upon information and belief, Citation injected hundreds of thousands of barrels of Toxic Substances into the Citation SWD Wells.

On or about April 7, 2021, Plaintiffs called the Oklahoma Corporation Commission ("OCC") to investigate their water well on Plaintiffs' Property. An OCC Field Inspector was dispatched to Plaintiffs' Property and performed a YSI meter test on the water well. Upon best available information and belief, the YSI meter provided a result of approximately 6,000 ppm.

Thereafter, various studies and investigations were performed on various Citation O&G Wells and Citation SWD Wells and the surrounding land adjacent to Plaintiffs' Property. These investigations and studies performed at the request of the OCC representatives continued throughout the years 2021 and 2022.

Thereafter, on or about October 28, 2022, the OCC's Pollution Abatement Manager made a determination that Citation was the responsible party and referred the matter to the OCC's Pollution Abatement Department.

As a result of Citation's management and operation of the Citation Wells, the groundwater beneath Plaintiffs' Property is contaminated, and the plume of groundwater contamination continues to be an instrument of further pollution, as it moves beneath Plaintiffs' Property.

The Citation Wells as defined herein have also impacted the soil and have contaminated the same with Toxic Substances associated with Defendant's disposal and other operations and continue to be a source of contamination to the surface and subsurface

soils and groundwater.

The release of Toxic Substances associated with the Defendant's disposal and other operations flowing over and into the surface, surface water, subsurface, and groundwater on or beneath Plaintiffs' Property and surface and subsurface soils is ongoing and continuing.

### b. Procedural History

As a result of Defendant's above-described actions, Plaintiffs filed a Petition alleging multiple causes of action against Defendant before the District Court of Caddo County, State of Oklahoma (Case. No. CJ-23-37, the "Caddo Action") on April 6, 2023. Plaintiffs asserted the following causes of action against Defendant: negligent injury to property, nuisance, annoyance, and inconvenience, trespass, and unjust enrichment. Plaintiffs seek the following damages:

1. Judgment against Defendant and awarding Plaintiffs damages in an amount exceeding $75,000.00 for the loss in value and, loss of use and enjoyment, of Plaintiffs' Property as a result of Defendant's actions and omissions;

2. Judgment ordering Defendant to abate the public and private nuisance created by Defendant, including but not limited to remediating the soil and groundwater of Plaintiffs' Property;

3. Judgment against Defendant awarding damages in an amount exceeding $75,000.00 for Plaintiffs' annoyance, inconvenience, and distress as a result of the nuisance created by Defendant;

4. Judgment for monetary damages in an amount exceeding $75,000.00 suffered by Plaintiffs including the diminished value to Plaintiffs' land, personal annoyance, inconvenience and distress, including and

4

all costs and expenses that will be incurred by Plaintiffs as a direct and proximate result of the wrongful trespass of Defendant;

5.     Judgment for monetary damages in an amount exceeding $75,000.00 on the basis that Defendant has been unjustly enriched by its actions and/or omissions to the detriment of Plaintiffs;

6.     Judgment against Defendant and in favor of Plaintiffs for punitive damages in an amount exceeding $75,000.00;

7.     Judgment against Defendant awarding Plaintiffs' their attorneys' fees, experts fees, costs, and expenses;

8.     Judgment against Defendant for prejudgment and post judgment interest; and

9.     Any and all other just and appropriate relief.

On May 11, 2023, Defendant filed its Notice of Removal in the Caddo Action, removing the litigation from the District Court of Caddo County, State of Oklahoma, to the United Stated District Court for the Western District of Oklahoma.  Defendant filed its Answer to Plaintiff's Petition/Complaint on May 15, 2023.  A Scheduling Conference was set by the Court on July 6, 2023, for August 3, 2023, but the same was struck on July 21, 2023, following the filing of Defendant's Motion to Stay on July 20, 2023.

## II.    THE OKLAHOMA CORPORATION COMMISSION DOES NOT RETAIN EXCLUSIVE JURISDICTION OVER DISPUTES BETWEEN PRIVATE PARTIES

Defendant's first fatal flaw in its Motion is that the OCC does not retain exclusive jurisdiction over disputes between private parties, such as individuals or entities.    "The Corporation Commission is a tribunal of limited jurisdiction and has only such authority as is expressly or by necessary implication conferred upon it by the Constitution and

statutes of this state." *Meinders v. Johnson*, 2006 OK CIV APP 35, ¶ 19, 134 P.3d 858.

"The OCC oversees the conservation of oil and gas, and its jurisdiction is limited to the

protection and resolution of public rights." *Morgan v. Okla. Corp. Comm'n*, 2012 OK CIV

APP 31, ¶ 10, 274 P.3d 832 (relying on *Marathon Oil Co. v. Corp. Comm 'n of State of

Okla.*, 1994 OK 28, 910 P.2d 966). "The protection of public rights includes the prevention

of waste and the protection of correlative rights of owners of mineral interests in land

overlying a common source of supply." *Morgan*, 2012 OK CN APP 31 at ¶ 11 (collecting

cases). "**When the conflict between the parties does not affect the 'rights within a**

**common source of supply and thus' does not affect 'the public interest in the**

**protection of production from that source as a whole,' the district courts, and not the**

**OCC, have jurisdiction**." *Grayhorse Energy, LLC v. Crawley Petroleum Corp.*, 2010 OK

CIV APP 145, ¶ 12,245 P.3d 1249 (quoting *Samson Resources Co. v. Corp. Comm'n*, 1985

OK 31, ¶ 9, 702 P.2d 19) (emphasis added).

The district courts retain jurisdiction over: "questions in an action concerning the

relationship of private parties, their duties, rights and obligations, and the existence of

liability for the breach of such duties [are] matters particularly with[in] the province of the

district court." *Rogers v. Quiktrip Corp.*, 2010 OK 3, ¶ 7,230 P.3d 853.

In this matter, Plaintiffs are private citizens suing a private oil and gas company.

There is no matter of the public interest at issue in this litigation.  Defendant damaged

Plaintiffs' land through its actions and inactions, and Plaintiffs now have sued to receive

damages related to Defendant's actions and inactions.  Defendant should not be permitted

to expand the scope of this litigation to fit its narrative, when in fact the dispute involves

private citizens suing a private company.  As such, the OCC does not retain exclusive jurisdiction in this matter.  As private citizens, Plaintiffs are outside the limited jurisdiction of the OCC.

### III.    THE OCC CANNOT AWARD DAMAGES.

Despite Defendant's attempted arguments to the contrary, the OCC cannot make Plaintiffs whole as it does not have the power to award damages.  "The OCC is a tribunal of limited jurisdiction. It only has such authority as is expressly or by necessary implication conferred upon it by the Oklahoma Constitution and statutes of the state." *Morgan v. Oklahoma Corp. Comm'n*, 2012 OK CIV APP 31, ¶ 10, 274 P.3d 832, 836 "…the Corporation Commission has no jurisdiction to award damages or determine *private* disputes between an industry within its regulatory authority and an individual outside the limited powers granted by the Oklahoma constitution and statutes." *Meinders v. Johnson*, 2006 OK CIV APP 35, ¶ 19, 134 P.3d 858, 865 (emphasis contained in text of decision).

"The Commission, although possessing many of the powers of a court of record, is without the authority to entertain a suit for damages." *Rogers,* 2010 OK 3, ¶ 6, 230 P.3d at 857. **Private tort actions, therefore, are exclusively within the jurisdiction of district courts."** Ladra v. New Dominion, LLC, 2015 OK 53, ¶ 10, 353 P.3d 529, 531 *citing to Grayhorse Energy, LLC v. Crawley Petroleum Corp.,* 2010 OK CIV APP 145, ¶ 12, 245 P.3d 1249, 1254 (emphasis added).

On page 6 of its Motion, Defendant informs the Court that Plaintiffs "…are asking this Court for abatement as a remedy."  This is not an accurate description of Plaintiffs' Petition filed before the District Court for Caddo County, State of Oklahoma, which has

been removed to the United State District Court for the Western District of Oklahoma. A simple review of Plaintiffs' causes of action (summarized above), demonstrates that Plaintiffs are seeking damages in excess of $75,000.00 from Citation, as well as punitive damages, neither of which the OCC has the power to award. It does not matter what happens before the OCC (which has already deemed Citation to be liable), these damages cannot be awarded by any tribunal other than the District Court. Further, the language of 17 O.S. § 52, cited by Defendant, does not state that the OCC has the power to award damages to damaged parties. Given the fact that the OCC is a tribunal of "limited jurisdiction," whose power derives solely from the legislature, it cannot maintain exclusive jurisdiction over this matter because it cannot completely resolve this matter.

## IV. THE *SCHWARTZMAN* TEST DOES NOT SUPPORT THE GRANTING OF DEFENDANT'S MOTION

In support of its Motion, Defendant relies heavily on what are known as the *Schwartzman* factors, which are: ( 1) whether the court is being called upon to consider factual issues outside the conventional experience of judges; (2) whether defendant could be subject to conflicting orders; (3) whether agency proceedings have already begun; ( 4) whether the agency has shown diligence in resolving the issue; and (5) the type of relief requested. *Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Railway*, 857 F.Supp. 838, 841-843 (D.N.M. 1994).

It is important to note that *Schwartzman* is not an Oklahoma case, and thus, carries no precedential value. However, a review of the *Schwartzman* factors indicates that even if this were an Oklahoma case with more precedential value, it still does not provide this Court with the requisite justification to grant Defendant's Motion.

The first *Schwartzman* factor is not met.  The Court is not being called upon to "consider factual issues outside the conventional experience of judges".  Despite Defendant's arguments to the contrary, this Court is more than capable of hearing Plaintiff's causes of action.  Oklahoma civil judges, both federal and state, see a litany of oil and gas cases, and a large subset of these cases are pollution cases. Simply because there is a pollution event in Oklahoma, which will subject the responsible party (in this case Citation) to payment of damages and potential remediation, does not require a district court to await action from the OCC. Regarding pollution cases specifically, the 10th Circuit held: "There are many cases in which the Oklahoma courts have determined the existence of water and soil pollution from oil and gas activities without referring the issue to the Commission.  *Marshall v. El Paso Nat'l Gas Co.*, 874 F.2d 1373, 1378 (10th Cir. 1989) In *Marshall*, the 10th Circuit was interpreting Oklahoma state law, and concluded that water and soil pollution cases are routinely determined ***without*** the OCC's involvement and is within the conventional knowledge of the judge and jury.  Such is the case here.  Perhaps most importantly, Plaintiffs are Oklahoma citizens with an inviolate right to a jury trial as to those claims and damages sought in their Petition.

The second of the *Schwartzman* factors concerns whether the litigants will be subject to conflicting orders.  Currently, the OCC has taken no remedial action regarding the pollution on Plaintiffs' Property.  However, they have taken action, action which Defendant did not direct the Court to.  In the "Oklahoma Corporation Commission Incident and Complaint Investigation Report" (the "Report"), attached to Defendant's Motion as Exhibit 3, the OCC concluded:

Recommendation: 10-28-22:  The manager of Pollution Abatement Shawn Coslett has determined Citation as the responsible party and has recommended the incident investigation be referred to Pollution Abatement.
(Defendant's Ex. 3, p. 3)

Given the OCC has made a finding that Citation is the responsible party for the pollution on Plaintiffs' Property, damages are the focus in the current litigation.  The OCC cannot award damages for any reason; therefore, realistically there will be no conflicting rulings.  Citation is responsible for the pollution and resultant damages.  The district court must determine how much Citation will pay for these damages to Plaintiffs as the OCC cannot.

Regarding the third factor, "whether agency proceedings have already begun," it is not in dispute that they have.  However, as noted above, part and parcel to these proceedings includes a finding that Citation was liable for the pollution.  The OCC cannot determine damages; therefore, there is no reason for delay of the current litigation indefinitely while the OCC determines what remediation action may be needed.

The fourth factor, "whether the agency has shown diligence," favors denial of Defendant's Motion.  Plaintiffs first contacted the OCC on April 7, 2021.  This is nearly two and one-half (2½) years ago.  While a finding as to responsibility from the OCC has been determined as Citation, the method of abatement and remediation has not.  As discussed in greater detail below, a stay of this action will result in Plaintiffs being in limbo, and they are in a far worse position to deal with ongoing OCC hearings than Citation. Citation clearly wants to drag this lawsuit out to avoid paying damages for which they are liable.  The Court should not allow this tactic to prevail, as a multi-million dollar oil

company is far better situated to deal with strung out litigation than a private couple. Staying this case, knowing the OCC has already had this matter before it for well over two (2) years, knowing the OCC cannot award damages, and knowing that the OCC has already determined Citation to be liable, would prejudice Plaintiffs and unfairly benefit Citation.

Finally, regarding the type of relief requested, as previously stated, Plaintiffs have sued Citation for damages. Damages which the OCC cannot award. This is not simply a case of remediation and abatement; it is a case where Plaintiffs have been significantly damaged. Staying this case will only delay Citation paying for its negligent actions. It will only force Plaintiffs to continue to suffer damages while a lawsuit sits in limbo waiting for a state agency, that has already determined liability, to make a determination regarding abatement.

The Court should decline to follow the New Mexico case cited by Defendant, as the *Schwartzman* factors would not support a stay of this action as this Court is more than capable of determining the issues in this case.

## V.    THE DOCTRINE OF PRIMARY JURISDICTION IS INAPPLICABLE TO THIS MATTER

Many of the cases cited by Defendant in its brief regarding the issue of primary jurisdiction involve matters that sought injunctive relief. As the Court is aware, Plaintiffs have made no such request in this litigation. As such, any citations to cases Defendant seeks to invoke as precedent should be disregarded where such cases include a request for injunctive relief, as the same is not present in this litigation, making such cases distinguishable and of little to no precedential value.

Additionally, many of the cases cited by Defendant do not concern the OCC, or, if they do, they do not concern suits for damages resulting from pollutants.  The Court in *Grayhorse*, cited above, noted: "…Oklahoma has *not* adopted the primary jurisdiction despite suggestions from some commentors to do so."  *Grayhorse* at 1256. (emphasis contained in text). The bulk of Defendant's Motion was spent convincing this Court to apply a doctrine that has not been adopted by the State of Oklahoma.  It has already been shown above that the *Schwartzman* factors favor a denial of Defendant's Motion.  Currently, the OCC has not undertaken any remedial action regarding the pollution on Plaintiffs' property in the more than 2 years it has undertaken its investigation, which is minimal.  This Court is vested with the exclusive jurisdiction to determine liability for civil wrongs and award Plaintiffs damages related thereto; something the OCC cannot do.

## VI.    DEFENDANT'S MOTION SHOULD BE DENIED AS IT IS PREMATURE AND UNECESSARY.

This matter was filed a little more than four (4) months ago before the District Court of Caddo County, State of Oklahoma.  It was only removed on May 11, 2023.  Defendant filed its Motion on July 20, 2023.  Defendant only filed an Answer in this case on May 15, 2023.  Neither party has conducted any discovery.  The parties do not have a discovery schedule set, nor a trial date.  A stay at this point of the case is premature in that the parties have not issued or propounded any written discovery.

However, it is also unnecessary.  Given how young this case is, it is unlikely that the parties will be able to make it to trial any time soon.  As such, there is no harm in permitting the matter to proceed through both the OCC and the District Court concurrently.  Given the realities of timing in civil litigation, be it in state court or federal court, the OCC is more than

likely going to complete its review of this matter far before the parties even reach the motion in limine stage, much less trial. Indeed, the OCC has already determined Citation to be responsible for the pollutants damaging Plaintiffs' Property. There is no chance for conflicting judgments at this point, as the OCC has already determined liability.

As noted above, there is an incredibly disproportionate effect on the litigants in this matter if this matter is stayed. A stay will provide Defendant with a significant and appreciable benefit, as Plaintiffs will be forced to cease their efforts to make themselves whole following the damages sustained due to Defendant's actions and inactions. A corporation the size of Citation is much more well-equipped to deal with a months-long, or years-long, given that the matter has already been before the OCC for more than two (2) years, stay than Plaintiffs; two individual private citizens.

This stalling tactic makes things more difficult for Plaintiffs, and this cannot be legitimately argued otherwise.

Should the Court determine a stay is necessary, Plaintiffs suggest that the abatement and remediation portion of this lawsuit be ruled upon by the OCC, while the lawsuit moves forward on the issue of damages against Defendant. This would be a bifurcation of sorts. Under this proposal, Defendant will be permitted to argue abatement and remediation to the OCC, while Plaintiffs can continue to pursue their claims for damages before this Court. Given that the OCC has already determined liability, this could be a workable solution. It remains Plaintiffs' position that a stay is not needed, but should the Court be inclined to consider granting Defendant's Motion, this compromise would work for both parties.

## **CONCLUSION**

It is clear that a stay is unnecessary and unsupported in this matter.  As Plaintiffs are seeking damages against Defendant, damages which the OCC cannot award, Defendant's Motion should be denied, and this matter permitted to proceed so that Plaintiffs can attempt to make themselves whole following the release of pollutants onto their Property by Defendant.

Respectfully submitted on August 10, 2023.


By: *s/Justin T. Hiersche*
Justin Hiersche, OBA #20724
J. Scott Henderson, OBA #20722
BLANEY, TIPTON, HIERSCHE & ODOM, PLLC
204 N. Robinson, Ste. 1250
Oklahoma City, OK 73102
(405) 235-8445
(405) 236-3410 facsimile
justin@btlawokc.com
shenderson@btlawokc.com

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2023, I electronically transmitted the attached document to the Clerk of the Court using the Electronic Case Filing System for filing. Based on the records currently on file in this case, the Clerk of the Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System, including:

L. Mark Walker, OBA # 10508
Timothy M. Sowecke, OBA # 32512
CROWE & DUNLEVY, P.C.
Braniff Building
324 North Robinson Avenue, Suite 100
Oklahoma City, Oklahoma 73102
(405) 235-7718
mark.walker@crowedunlevy.com
tim.sowecke@crowedunlevy.com

**Attorneys for Defendant Citation
Oil & Gas Corporation**

*s/ Justin Hiersche*